IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

MIGUEL A. JARAMILLO,

                    Petitioner,

          vs.

DALE ARTUS, Superintendent, Attica
Correctional Facility,[1]

                    Respondent.

No. 9:12-cv-01657-JKS

ORDER
[Re: Motion at Docket No. 12]
and
MEMORANDUM DECISION

        Miguel A. Jaramillo, a New York state prisoner proceeding *pro se*, filed a Petition for a

Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Jaramillo is currently in

the custody of the New York State Department of Corrections and Community Supervision and

is incarcerated at Attica Correctional Facility.  Respondent has answered, and Jaramillo has

replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

        On October 18, 2009, Lloyd Little was working as a bouncer at Tico's Bar in Watertown,

New York.  Prior to the bar closing, Little encountered Jaramillo and his girlfriend arguing

outside the bar.  When Little attempted to intervene, Jaramillo stabbed him in the abdomen with

a knife.  A grand jury charged Jaramillo with first-degree assault, second-degree reckless

endangerment, first-degree perjury, and two counts of fourth-degree criminal possession of a

weapon.

---

        [1]        Dale Artus is substituted for Mark L. Bradt as Superintendent, Attica Correctional
Facility.  FED. R. CIV. P. 25(d).

Jaramillo was arraigned on June 3, 2010, and entered a not guilty plea to each count of the indictment. At arraignment, Jaramillo requested the assignment of new counsel, claiming that his representation by the Public Defender's Office was ineffective because counsel had waived his speedy trial rights without his consent. The trial court denied the request, stating:

> [F]rom my observation there has been no ineffective assistance of counsel. Now, whether or not they waive certain hearings, that may be to your advantage to do that. So as far as I'm concerned, they have done nothing against your interest so far. In fact, it is just the opposite. We have had one, two, three, four, five, six, seven, eight conferences before this was presented to the Grand Jury. Now, whether or not they came back to you with information that you didn't want to hear, that's a whole different issue.
> But as far as ineffective assistance of counsel, no, I see none of that, and they will be appointed to represent you.

Through counsel, Jaramillo moved to dismiss the indictment, claiming that the grand jury proceedings were defective because he was shackled during his testimony before that tribunal. He alternatively sought reduction of the indictment on the grounds that the evidence presented to the grand jury was not legally sufficient to prove serious injury and that there was insufficient evidence that Jaramillo intended to use the weapon unlawfully against another. He further moved to suppress eyewitness identification, statements, and physical evidence as tainted by unlawful police conduct. The trial court found that no defect occurred at grand jury and that the evidence was legally sufficient to establish serious physical injury.

The court held a suppression hearing on the remainder of the motion on September 29, 2010. Prior to the commencement of the hearing, Jaramillo again requested a new attorney. He stated that he had filed a civil suit against the Public Defender's Officer which created a conflict such that the court should assign him a new attorney. The court stated that there were no grounds to remove the Public Defender's Office from their representation of Jaramillo and

expressed its belief that Jaramillo's actions were "a deliberate action on [Jaramillo's] part to delay these proceedings."

At the hearing, Detective James Romano from the Watertown Police Department testified that, in the early morning hours of October 18, 2009, he was called into work for a reported stabbing at Tico's Bar. He stated that he developed a suspect through witnesses who also informed him that the suspect might be in possession of a shotgun. When Detective Romano and another police officer arrived at Jaramillo's residence, Jaramillo allowed them to enter the apartment. When Jaramillo entered the living room to obtain identification, the officers followed him and observed a shotgun and a bullet proof vest lying in plain view. Another police office took the shotgun and vest into possession. Jaramillo denied any wrongdoing and, although he at times stated that he did not have to go with the police officers because they did not have a warrant, he ultimately agreed to accompany the officers to the station for an interview. At the station, Detective Romano read Jaramillo his *Miranda*[2] rights, and Jaramillo gave a signed, written statement about his involvement in the stabbing. After giving his written statement, Jaramillo stated that the victim had grabbed him and that his actions were made in self-defense. Jaramillo then stated that he no longer wanted to speak to the officer.

A status conference was held on January 7, 2011. The conference was held in chambers because a jury on an unrelated case was deliberating in the courtroom. At the conference, Jaramillo requested to represent himself, and the court engaged in a lengthy colloquy with Jaramillo before the following discussion occurred:

---

[2]        *See Miranda v. Arizona*, 384 U.S. 436 (1966).

| | |
|---|---|
| THE COURT: | All right.  Well, Mr. Jaramillo, I am going to allow you to represent yourself.  I don't know that that is a very wise decision for you, but my role here isn't to decide whether you are wise or unwise, Mr. Jaramillo.  You do have a Sixth Amendment right to represent yourself.  I can tell you that everyone that has done that in this Court for the last 11 years has been convicted of something. |
| [JARAMILLO:] | I understand that, Your Honor. |
| THE COURT: | All right.  So you know, the odds aren't with you, Mr. Jaramillo; but that's not for me to decide. |
| [JARAMILLO:] | Yeah, I can tell. |
| THE COURT: | But it is not a wise thing, but I think you have enough intelligence and you are able to do that. |

The court granted Jaramillo's motion to represent himself but appointed Jaramillo's previously-assigned attorney to serve as shadow counsel during trial.  At the conference, Jaramillo also moved to reduce the indictment on the ground that the evidence presented to the grand jury was not legally sufficient to prove serious injury.

On January 18, 2011, the court held an additional conference where it handed down its written decision on the suppression motion.  The court found the police testimony credible and concluded that the officers were entitled to seize the shotgun because it posed "a legitimate safety concern" and that Jaramillo consented to the seizure of the vest.  The court also declined to suppress Jaramillo's statement to the police.  The court did, however, grant Jaramillo's motion to dismiss count 4 of the indictment, finding that there was not legally sufficient evidence before the grand jury to sustain that count.

Jaramillo proceeded to jury trial on January 24, 2011.  During trial, the court held at least three conferences in chambers with both parties present.  At the first of these in-chambers proceedings, the court ruled that the prosecution would be allowed to introduce evidence that Jaramillo had possessed the shotgun and vest as well as other witness testimony of Jaramillo's prior bad acts.  Upon conclusion of trial, the jury found Jaramillo guilty of first-degree assault,

fourth-degree criminal possession of a weapon, and first-degree perjury. After hearing statements from Jaramillo and the prosecution as well as reviewing the pre-sentence report, the court sentenced Jaramillo to an imprisonment term of 14 years plus 5 years of post-release supervision on the assault conviction, a concurrent 1-year sentence on the criminal possession of a weapon conviction, and a consecutive term of $1^1/_3$ to 4 years on the perjury conviction. The court also imposed restitution and a mandatory surcharge.

Through counsel, Jaramillo appealed his conviction, arguing that: 1) the evidence was legally insufficient to sustain his assault conviction and the verdict was against the weight of the evidence; 2) the trial court committed "cumulative error" by refusing to assign new counsel, denying his motion to suppress evidence and admitting the evidence at trial, holding proceedings in chambers, failing to give a curative instruction during the prosecution's summation, and denying his motion to dismiss the grand jury proceeding; and 3) the sentence imposed was erroneous as well as harsh and excessive. Jaramillo also submitted a *pro se* supplemental brief, arguing that: 1) the trial court failed to dismiss the indictment and failed to disclose to the Appellate Division and his appellate counsel Jaramillo's motion to dismiss the indictment; 2) trial counsel was ineffective for waiving Jaramillo's rights to a speedy trial and to testify at the grand jury; 3) the trial court should have dismissed the indictment due to the prosecutor's knowing and willful use of perjured testimony in obtaining it; and 4) the trial erroneously refused to suppress evidence seized from his home and statements he made to law enforcement. The Appellate Division affirmed his conviction in its entirety in a reasoned opinion. *See People v. Jaramillo*, 947 N.Y.S.2d 876, 878 (N.Y. App. Div. 2012). Appellate counsel then sought leave to appeal the denial of the claims brought in the main appellate brief. Jaramillo also sought

leave, raising the claims he addressed in his *pro se* supplemental brief. The Court of Appeals summarily denied both requests on September 27, 2012.

Jaramillo timely filed a Petition for a Writ of Habeas Corpus to this Court on November 2, 2012. Jaramillo subsequently moved for discovery and requested that this Court investigate the authenticity of documents indicating that Jaramillo's counsel waived his right to a speedy trial on Jaramillo's behalf.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Jaramillo raises the following claims: 1) the trial court committed cumulative errors, including a) abusing its discretion when it denied Jaramillo's repeated requests for new counsel, b) allowing the admission of prior bad acts evidence, c) holding proceedings in chambers rather than open court, d) denying his motion to dismiss the indictment even though he was required to testify before the grand jury in shackles, and e) failing to issue curative instructions after the prosecution inaccurately stated its burden during summation; 2) the trial court failed to disclose to the Appellate Division and appellate counsel for appellate review Jaramillo's motion to dismiss the indictment and failed to dismiss the indictment on speedy trial grounds; 3) trial counsel was ineffective for waiving his right to a speedy trial and to testify before the grand jury; 4) the trial court failed to dismiss the indictment after it was obtained through the prosecutor's knowing use of perjury; and 5) the trial court failed to suppress evidence obtained without a warrant and statements made by Jaramillo in violation of his right against self-incrimination.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

## IV. DISCUSSION

A.     Exhaustion

Respondent correctly contends that two of Jaramillo's claims are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give

the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). As Respondent notes, Jaramillo raised his admission of prior bad acts and failure to give curative instructions arguments (both part of claim 1) solely on the basis of state law.

These unexhausted claims are procedurally barred. Because Jaramillo's claims are based on the record, they could have been raised in his direct appeal but were not; consequently, Jaramillo cannot bring a motion to vacate as to these claims. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Moreover, Jaramillo cannot now raise these claims on direct appeal because he has already filed the direct appeal and leave application to which he is entitled. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008); *see also*

*Grey*, 933 F.2d at 121. A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). Jaramillo does not claim that cause exists for his procedural default nor does he assert actual innocence. Because Jaramillo may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Despite Jaramillo's failure to exhaust these claims, this Court nonetheless may deny those claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, this Court declines to dismiss the unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B.     Merits

1. Alleged Errors Relating to the Indictment (Claims 1D, 2, and 4)

Jaramillo contends that the trial court should have dismissed the indictment because the grand jury proceedings were defective as Jaramillo was required to testify before the grand jury in shackles (claim 1D), the prosecutor knowingly used perjury (claim 4), and his right to a speedy trial was violated (part of claim 2). He additionally contends that the trial court failed to

disclose to the Appellate Division and appellate counsel for appellate review his motion to dismiss the indictment on speedy trial grounds (remainder of claim 2). The Appellate Division summarily rejected these claims on direct appeal. *Jaramillo*, 947 N.Y.S.2d at 878.

a. Defective Grand Jury Proceedings Due to Shackles and Alleged Perjury

Jaramillo's claims that the indictment should have been dismissed because it was obtained as a result of defective state grand jury proceedings are not cognizable on federal habeas review. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g., United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation.").

In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490–91 (2d Cir. 2002)[3] ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)); *May v. Warden*, 07 Civ. 2176, 2010 WL 1904327, at *3 (S.D.N.Y. May 10, 2010) (dismissing

---

[3] Cited for persuasive value pursuant to Second Circuit Rule 32.1.1.

habeas claim that prosecutor knowingly presented false evidence to grand jury). Jaramillo

therefore is not entitled to relief on his defective grand jury proceedings claims.

### b. Speedy Trial

Construing his *pro se* Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), the Court may discern that Jaramillo's claim attacking the indictment on speedy trial

grounds additionally raises a constitutional claim that Jaramillo was denied his right to a speedy

trial. To the extent that Jaramillo raises speedy trial violations based on New York criminal

procedural law, a state statutory protection, however, his claims are not cognizable on federal

habeas review. *See, e.g., Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *9

(E.D.N.Y. Aug. 30, 2012); *Hodges v. Bezio*, No. 09-CV-3402, 2012 WL 607659, at *4

(E.D.N.Y. Feb. 24, 2012); *Rodriguez v. Superintendent*, *Collins Corr. Facility*, 549 F. Supp. 2d

226, 236-37 (N.D.N.Y. 2008). Accordingly, any New York Criminal Procedure Law ("CPL")

§ 30.30 speedy trial claim is not a basis for relief in this Court.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy . . . trial." U.S. CONST. amend VI. This right is enforced against the

states through the Due Process Clause of the Fourteenth Amendment. *Klopfer v. N. Carolina*,

386 U.S. 213, 222-23 (1967). The right to a speedy trial functions "(i) to prevent oppressive

pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the

possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). As

the Supreme Court made clear in *Barker*:

> [T]he right to a speedy trial is a more vague concept than other procedural rights.
> It is, for example, impossible to determine with precision when the right has been denied.
> We cannot definitely say how long is too long in a system where justice is supposed to be
> swift but deliberate. As a consequence, there is no fixed point in the criminal process

when the State can put the defendant to the choice of either exercising or waiving the
right to a speedy trial.

*Id.* at 521; *see also Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (the right to a speedy trial is
"amorphous," "slippery," and "necessarily relative"); *United States v. Ghailani*, 733 F.3d 29, 41
(2d Cir. 2013).

The Supreme Court has established a multi-factor balancing test to aid courts in assessing
whether a speedy trial violation has occurred: (1) the length of the delay; (2) the reason for the
delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant.
*Barker*, 407 U.S. at 530. The list is not exhaustive, and no single factor is dispositive. *Id.*
Accordingly, "reasonable minds may disagree in close cases on whether the balance of factors
tips in favor of recognizing a violation of the Speedy Trial Clause." *United States v. Ray*, 578
F.3d 184, 191 (2d Cir. 2009); *see also Barker*, 407 U.S. at 521 ("It is, for example, impossible to
determine with precision when the right has been denied.").

In this case, Jaramillo was arrested on October 18, 2009, and the trial commenced on
January 24, 2011—a period of approximately fifteen months. Jaramillo has therefore
demonstrated that the delay is "presumptively prejudicial." *See United States v. Vassell*, 970
F.2d 1162, 1164 (2d Cir. 1992) (suggesting that there is a general consensus that a delay of eight
months is presumptively prejudicial); *see also Doggett v. United States*, 505 U.S. 647, 652 n.1
(1992) (a delay that "approaches one year" is presumptively prejudicial). Nonetheless,
Jaramillo's claim fails in light of the application of the four *Barker* factors.

First, with respect to the length of the delay, a fifteen-month delay is shorter than the
delays in other cases in which the Second Circuit has found no Sixth Amendment violation. *See*
*United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (twenty-six month delay did not

violate right to speedy trial); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980). Second, at least part of the delay was necessary in order to allow his newly-assigned counsel to prepare for the grand jury and to conduct plea negotiations which—despite Jaramillo's contentions—was ultimately for his benefit. Upon Jaramillo's request, counsel withdrew the waiver of speedy trial time and requested that Jaramillo be permitted to testify at the grand jury. Furthermore, while Jaramillo has reasserted his right to a speedy trial, he has not claimed that the delay in the commencement of his trial caused him to suffer any prejudice or prevented him from presenting a full defense. Accordingly, Jaramillo cannot prevail on his speedy trial claim.

### c. Failure to Disclose

In support of his claim that the trial court failed to disclose to the Appellate Division and appellate counsel his motion to dismiss the indictment on speedy trial grounds, Jaramillo "requests judicial notice be taken by this Court that the trial court did not provide [his] motion to dismiss indictment pursuant to CPL §§ 30.30(1)(A) and 210.20(1)(G), and its decision and order to the New York State Appellate Division, Fourth Judicial Department, or his appellate attorney so it is part of the record on appeal to the appellate division in this manner." Federal Rule of Evidence 201(b) entitles this Court to take judicial notice of facts "not subject to reasonable dispute." FED. R. EVID. 201(b); *see Oneida Indian Nation v. New York*, 691 F.2d 1070, 1086 (2d Cir.1982) ("When there is no dispute as to the authenticity of . . . materials and judicial notice is limited to law, legislative facts, or factual matters that are incontrovertible, such notice is admissible.").

Judicial notice is not appropriate here because there is no support in the record that the motion and decision were not provided to the Appellate Division and thus Jaramillo's assertion

is far from incontrovertible.  In support of his claim, Jaramillo cites to a document entitled

"Appellate Attorney's List of Documents Filed by the Trial Court" that was apparently included

in an appendix to his supplemental brief on direct appeal, but he did not file that document

before this Court, and it is therefore not part of the record.  Jaramillo is therefore not entitled to

relief on his unsupported claim.  *See In re Vey*, 520 U.S. 303, 303-04 (1997) (per curiam)

(unsupported, conclusory statements insufficient to support allegations on habeas review).

Indeed, the record before this Court includes the appendix on appeal, prepared jointly by the

prosecution and Jaramillo's appellate counsel, which appears to show that the Appellate Division

and his appellate counsel received both Jaramillo's suppression motion and the trial court's order

denying it.

Moreover, even if Jaramillo were able to show that the Appellate Court did not have his

motion and the lower court's order in the record before it, Jaramillo cannot show that he was

prejudiced by such omission because Jaramillo was able to fully raise in his *pro se* supplemental

brief on direct appeal the arguments he made in his trial court motion.  The court's summary

denial of his claim, *see Jaramillo*, 947 N.Y.S.2d at 878 ("We have considered the contentions

raised by [Jaramillo] in his pro se supplemental brief and conclude that none warrants

modification or reversal of the judgment."), does not indicate that it lacked briefing or was

otherwise prevented from conducting effective appellate review.

2. Ineffective Assistance of Counsel and Denial of New Counsel (Claims 1A and 3)

Jaramillo additionally claims that he received the ineffective assistance of counsel

because his attorney waived without Jaramillo's consent his right to a speedy trial and his right

to testify in the grand jury.  He likewise argues that the court erred in not appointing new counsel.

a. Ineffective Assistance of Counsel—Waiver of Speedy Trial Rights

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Jaramillo must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard.  "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citing *People*

16

*v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New

York test, the court need not find that counsel's inadequate efforts resulted in a reasonable

probability that, but for counsel's error, the outcome would have been different. "Instead, the

'question is whether the attorney's conduct constituted egregious and prejudicial error such that

defendant did not receive a fair trial.'" *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584,

588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the

error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at

588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the

circumstances and the law at the time of the case and asking whether there was 'meaningful

representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being

somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840

N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the

outcome of the case would have been different but for counsel's errors; a defendant need only

demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People

v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New

York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.*

at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New

York courts, view the New York standard as being more favorable or generous to defendants

than the federal standard. *Id.* at 125.

Jaramillo's claim must fail, however, even under the more lenient New York standard.

The United States Supreme Court has long established that "[w]hat suffices for waiver depends

on the nature of the right at issue." *New York v. Hill*, 528 U.S. 110, 114 (2000). "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733 (1993). "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988).

An attorney, acting without direct consent from his client, can waive his client's speedy trial right because "[s]cheduling matters are plainly among those [rights] for which agreement by counsel generally controls." *Gonzalez v. United States*, 553 U.S. 242, 249 (2008) (quoting *Hill*, 528 U.S. at 115). Therefore, counsel's waiver of Jaramillo's rights to a speedy trial, even if counsel was acting without Jaramillo's consent or knowledge, does not alone rise to the level of deficient performance. As a practical necessity, attorneys must have control of trial management matters for "[t]he adversary process could not function effectively if every tactical decision required client approval." *Id.* (quoting *Taylor*, 484 U.S. at 418). Counsel's speedy trial waiver without Jaramillo's knowledge thus was not an unreasonable course of action by counsel who, after Jaramillo's retained attorney was allowed to withdraw, undertook Jaramillo's representation on March 15, 2010—just three days before the grand jury proceedings were scheduled to begin.

As the Appellate Division has recognized, however, the waiver of a defendant's speedy trial rights may amount to deficient representation if counsel waives a meritorious claim of a violation of a petitioner's speedy trial rights. *See People v. Garcia*, 822 N.Y.S.2d 322, 324

(N.Y. App. Div. 2006) (stating that while "[d]efense counsel may waive a defendant's unripe speedy trial rights . . . [a] single error of failing to raise a meritorious speedy trial claim is sufficiently egregious to amount to ineffective assistance of counsel").  In this case, Jaramillo was arrested on October 18, 2009.  New York's speedy trial statute requires that the prosecution announce their readiness for trial within six months of the commencement of the action.  N.Y. CRIM. PROC. LAW § 30.30(1)(a).  The prosecution therefore had six months, or until April 18, 2010, to announce readiness for trial.  On March 16, 2010, Jaramillo's counsel executed the speedy trial waiver.  He subsequently revoked the waiver in writing on May 7, 2010.  The matter was presented to the grand jury on May 10, 2010, and the prosecution announced readiness on June 3, 2010.  Approximately five months elapsed between Jaramillo's arrest and the speedy trial waiver.  The prosecution announced their readiness within a month from the revocation of the waiver, prior to the expiration of the six-month period.  Therefore, Jaramillo's speedy trial rights were not violated, and Jaramillo's counsel did not waive a meritorious speedy trial claim when he waived Jaramillo's unripe speedy trial rights.  Because the underlying claim is meritless, Jaramillo cannot assert an ineffective representation claim on this ground as counsel did not waive a meritorious claim to dismiss based upon a speedy trial violation.  *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *overruled on other grounds by Scheidler v. National Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 (2003).

b. Ineffective Assistance of Counsel—Waiver of Right to Testify

Because there is no constitutional right to testify before a grand jury, Jaramillo's claim that his counsel impermissibly waived his state right to testify before a grand jury is not cognizable on federal habeas review.  *See Burwell v. Superintendent of Fishkill Corr. Facility*,

No. 06 Civ. 787, 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray*, No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance" (collecting cases)). As the Second Circuit explained:

> We also reject the petitioner's argument that his claim should be interpreted as a claim for ineffective assistance of counsel based on his attorney's failure to secure his right to testify before the grand jury . . . . A defendant's right to testify before the grand jury is not a constitutional right; rather, it is a statutorily created right. N.Y. CRIM. PROC. LAW § 190.50(5). New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel.

*Davis*, 42 F. App'x at 491 n.1 (citing federal and state case law).

Furthermore, Jaramillo cannot show that he was prejudiced by his counsel's alleged waiver of his right to testify. The record indicates that Jaramillo did in fact testify before the grand jury. This is further evidenced by Jaramillo's claim in his Petition before this Court that the trial court erred in dismissing the indictment based on defective grand jury proceedings because he was forced to testify while in shackles, as discussed *supra*. It therefore appears that, if counsel initially waived Jaramillo's right to testify, he later revoked the waiver. Likewise, Jaramillo cannot demonstrate prejudice because he was later convicted at trial. *See Murry v. Greene*, No. 06-cv-0322, 2009 WL 3165637, at *8 n.9 (N.D.N.Y. Sept. 29, 2009) ("Petitioner maintains that if he could have testified before the grand jury, he could have explained the facts of the case and refuted the finding that he committed a crime. However, any error in grand jury

proceedings is cured by the subsequent conviction on the charge by the petit jury." (citing *Velez v. New York*, 941 F. Supp. 300, 316 (E.D.N.Y.1996))).

c. Denial of Request for New Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend VI. The Supreme Court has, however, "recognized that the right to choose one's own counsel is not absolute." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004). "The Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." *Id.* "Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997).

It is not sufficient for a defendant simply to request new counsel. "[A] defendant seeking substitution of assigned counsel must . . . afford the court with legitimate reasons for the lack of confidence." *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981). The Supreme Court has, however, "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Rather, "[i]n order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *McKee*, 649 F.2d at 931 (citation omitted). In determining whether a trial court abused its discretion in denying a motion for substitute counsel, the Second Circuit looks to the timeliness of defendant's motion, the adequacy of the court's

inquiry into the defendant's complaints, and whether the conflict "resulted in [a] total lack of communication preventing an adequate defense." *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001).

Because, as discussed above, Jaramillo's counsel did not render ineffective assistance when he waived Jaramillo's rights to a speedy trial and to testify before the grand jury, he necessarily cannot show that the trial court abused its discretion by not substituting counsel for those reasons. Moreover, Jaramillo cannot show that the trial court abused its discretion by refusing to substitute counsel after Jaramillo filed a civil lawsuit against the Public Defender's Office. As the appellate court concluded, substitution of counsel was not warranted "based on [Jaramillo's] apparent attempt to create a conflict of interest by commencing an action in federal court against the Public Defender." *Jaramillo*, 947 N.Y.S.2d at 878. The Second Circuit squarely has held that a petitioner cannot manufacture a conflict of interest "'merely by expressing dissatisfaction with [the] attorney's performance.'" *United States v. John Doe No. 1*, 272 F.3d 116, 126 (2d Cir. 2001) (quoting *United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000) ("'[A]n actual conflict of interest' does not necessarily arise every time that an attorney responds to allegations of incompetent representation or contradicts his client in open court." (citation omitted))).

Jaramillo nonetheless contends that there was a complete breakdown of communication warranting the substitution of counsel. In addressing this claim, the Court must consider "whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense" and "whether the defendant substantially and unjustifiably contributed to the breakdown in communication." *John Doe*

*No. 1*, 272 F.3d at 122-23 (citation and internal quotation marks omitted). While Jaramillo complains that his counsel failed to meet with him, the record indicates that Jaramillo exacerbated that problem by refusing to meet with his counsel on multiple occasions. Accordingly, to the extent that Jaramillo argues that the breakdown in communication chilled his ability to consult with his attorney, that belief is not a reasonable one and does not present a valid claim that his right to the effective assistance of counsel was violated. *Cf., e.g., id.* at 123-24 (finding no abuse of discretion in failure to substitute new counsel where distrust of current counsel allegedly prevented an adequate defense but the defendant's distrust was unreasonable and was the unjustifiable cause of any breakdown in communication); *United States v. Roston*, 986 F.2d 1287, 1292-93 (9th Cir. 1993) (same); *Thomas v. Wainwright*, 767 F.2d 738, 740-43 (11th Cir. 1985) (no constitutionally ineffective assistance of counsel where habeas petitioner unreasonably refused to communicate with his attorney).

Jaramillo has not demonstrated a potential, an actual, or a *per se* conflict of interest on the part of counsel and has failed to show either that counsel's representation of him in connection with the pre-trial proceedings or as shadow counsel during the trial fell below an objective standard of reasonableness or that he suffered prejudice as a result. Accordingly, Jaramillo is not entitled to relief on either his ineffective assistance of counsel or substitution of counsel claims.

d. Self-Representation

The Court also discerns that the Petition raises a potential claim that the trial court erred in granting Jaramillo's motion to represent himself after it denied his motion to substitute counsel. The Sixth Amendment "right to assistance of counsel implicitly embodies a correlative

right to dispense with a lawyer's help." *Faretta v. California*, 422 U.S. 806, 814 (1975) (citation and internal quotation marks omitted). "When an accused manages his own defense, he relinquishes, as purely a factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." *Id*. at 835 (citation and internal quotation marks omitted). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (citation and internal quotation marks omitted). There is no "formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Rather, the determination of whether a defendant has knowingly and intelligently waived his rights to counsel depends on "a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* In addition, the court must specifically warn a defendant electing to proceed *pro se* "of the hazards ahead." *Id*. at 88-89.

Prior to granting Jaramillo's motion, the trial court surmised that Jaramillo had a high school education and had completed some college credits. Jaramillo likewise indicated that he had prior experience in the California court system and that he had no physical or mental limitations. Jaramillo further indicated that he understood what was expected of him and that he would be expected to abide by the same rules that governed attorney conduct. He repeatedly stated that he wanted to exercise his Sixth Amendment right to represent himself. Under these

circumstances, Jaramillo's waiver of his right to counsel was knowing, voluntary and intelligent and the trial court did not unconstitutionally permit him to defend himself at trial. *Cf. Faretta*, 422 U.S. at 835 (trial court deprived defendant of his constitutional right to defend himself where defendant clearly and unequivocally declared that he wanted to represent himself, was literate, competent, and understanding). Moreover, the court mitigated any problems Jaramillo might encounter by appointing counsel to assist him as needed. Jaramillo therefore cannot prevail on any claim that the trial court erred in allowing him to represent himself.

### 3. Erroneous Admission and Failure to Suppress (Claim 1B and 5)

Jaramillo additionally contends that the trial court made a number of evidentiary errors.

#### a. Admission of Prior Bad Acts

Jaramillo first contends that the "trial court erred in admitting prior bad acts at trial without a showing of relevance and without properly balancing its potential for prejudice." Jaramillo does not in his Petition or the memorandum of law accompanying it point to any prior bad acts. Rather, he states in his Petition that "[t]he evidence included a shotgun and a military issue vest that was seized by police from his home without his consent and without a warrant." The substance of this claim is therefore identical to his claim that the trial court erred in failing to suppress the tangible evidence obtained without a warrant which is discussed below.[4]

---

[4] In any event, Jaramillo cannot prevail on a claim challenging the trial court's admission of prior bad acts even assuming that Jaramillo has correctly identified the claim as such because the appellate court's denial cannot be said to be contrary to or an unreasonable application of clearly established Supreme Court authority. *See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes"); *Allaway v. McGinnis*, 301

b. Failure to Suppress Tangible Evidence

Jaramillo's claim that the trial court should have suppressed the shotgun and vest as obtained by illegal means is precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).

In order to receive habeas review of his Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled, *see id.* at 70 & n.1, and Jaramillo has not asserted the existence of an unconscionable breakdown of that process in this case. Jaramillo therefore cannot prevail on this claim on a Fourth Amendment theory either.

---

F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation").

c. Failure to Suppress Statements to Law Enforcement

Jaramillo likewise contends that the trial court should have suppressed statements he made to law enforcement at his home before he was subsequently read his *Miranda* rights at the police station. The Supreme Court has held that an individual subjected to custodial interrogation by law enforcement personnel "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444.

At the suppression hearing, Detective Romano testified that Jaramillo allowed the officers to enter his apartment, was not constrained in any way when he answered their questions, and voluntarily accompanied them to the police station. Jaramillo nonetheless describes in his Petition the following confrontation:

> On October 18, 2009, three police officers arrived at [Jaramillo's] home, asked him questions about the incident he was convicted of while he was standing in the door to his kitchen without giving *Miranda* warnings and then, barged into his home, detained him so he was not free to leave, searched and seized items that were not in plain view without a warrant, questioned [him] again while in his living room and being detained without giving him *Miranda* warnings while there was no exigent circumstances or probable cause for the police to do these things without first obtaining a warrant and they did not obtain [his] consent to enter or search his home.

But his assertions are nothing more than an attack on the testimony of the police officers. Jaramillo misperceives the role of a federal court in a federal habeas proceeding attacking a state-court conviction. This Court is precluded from either re-weighing the evidence or

assessing the credibility of witnesses. This Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the finding of fact. *See Schlup*, 513 U.S. at 330. In the absence of clear and convincing evidence to the contrary, this Court is bound by the factual findings of the state court which concluded that Jaramillo allowed the police to enter his residence such that his statements given to police at his home were not the product of custodial interrogation and offered his later oral and written statements, which were the subject of custodial interrogation, only after being advised of his rights to remain silent and to have the assistance of an attorney. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. Jaramillo is therefore not entitled to relief on this claim.

### 4. In-Chamber Proceedings (Claim 1C)

Jaramillo additionally claims that "[o]n at least four occasions the trial court elected to hold proceedings in its chambers without the showing of necessity which violated [his] right to a public trial."

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST., amend. VI. The "public trial" clause was made applicable to state prosecutions by *In re Oliver*, 333 U.S. 257, 273 (1948), and therefore the Sixth Amendment entitles a defendant in a state criminal proceeding to a public trial, *see id.*; *accord*, *e.g.*, *Presley v. Georgia*, 558 U.S. 209, 214-15 (2010) (per curiam); *Waller v. Georgia*, 467 U.S. 39, 48 (1984) (a courtroom cannot be closed to the public unless "the party seeking to close the hearing . . . advance[s] an overriding interest that is likely to be prejudiced, the closure . . . [is] no broader than necessary to protect that interest, the trial court . . .

consider[s] reasonable alternatives to closing the proceeding, and it . . . make[s] findings adequate to support the closure"); *Gibbons v. Savage*, 555 F.3d 112, 115 (2d Cir. 2009).

However, Jaramillo cannot prevail on this claim because he failed to object to the court's holding proceedings in closed chambers. "Where a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial." *Bennefield v. Kirkpatrick*, 741 F. Supp. 2d 447, 457 (W.D.N.Y. 2010) (quoting *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006) (footnote omitted)); *see also Levine v. United States*, 362 U.S. 610, 618-19 (1960); *Singer v. United States*, 380 U.S. 24, 35 (1965) (noting that a defendant can waive the right to a public trial). In *Levine*, the Supreme Court explained:

> The continuing exclusion of the public in this case is not to deemed contrary to the requirements of the Due Process Clause without a request having been made to the trial judge to open the courtroom at the final stage of the proceeding, thereby giving notice of the claim now made and affording the judge an opportunity to avoid reliance on it. This was not a case of the kind of secrecy that deprived petitioner of effective legal assistance and rendered irrelevant his failure to insist upon the claim he now makes. Counsel was present throughout, and it is not claimed that he was not fully aware of the exclusion of the general public. The proceedings properly began out of the public's presence and one stage of them flowed naturally into the next. There was no obvious point at which, in light of the presence of counsel, it can be said that the onus was imperatively upon the trial judge to interrupt the course of proceedings upon his own motion and establish a conventional public trial. We cannot view petitioner's untenable general objection to the nature of the proceedings by invoking Rule 42(b) as constituting appropriate notice of an objection to the exclusion of the general public in the circumstances of this proceeding under Rule 42(a).

362 U.S. at 619.

Under *Levine*, Jaramillo's failure to lodge a timely objection to conducting proceedings in chambers effected a waiver of any right he may have had to conducting them in open court. *See Bennefield*, 741 F. Supp. at 458 (citing *United States v. Guzman*, 271 F. App'x 442, 444 (5th

Cir. 2008) ("However, Guzman failed to object to the closure of the courtroom and therefore waived any right he may have had to an open sentencing hearing.")).

Even if Jaramillo had timely objected to the proceedings, he cannot demonstrate that habeas relief is warranted on this claim "because the record is devoid of 'any suggestion that new open proceedings would likely produce a substantial change in the parties' positions[.]'" *Id.* at 459 (quoting *Hunt v. Tucker*, 875 F. Supp. 1487, 1530 (N.D. Ala.1995)).  The trial transcript indicates that the court held a number of brief conferences regarding ministerial or scheduling matters in its chambers, apparently while the jury was already convened in the courtroom, prior to each day of trial.  It appears that the length of these conferences was at most twenty minutes.  As the appellate court concluded, "[t]he record establishes that the proceedings at issue were distinct from trial proceedings that must be conducted in public."  *Jaramillo*, 947 N.Y.S.2d at 878.  Accordingly, Jaramillo cannot show that he was wrongly deprived of his right to an open trial, and habeas relief is not warranted on this claim.

## 5. Failure to Offer Curative Instructions (Claim 1E)

Jaramillo finally asserts that "[t]he trial court failed to intervene with a curative instruction when, during summation, the prosecutor shifted the burden of proof onto [Jaramillo] to prove reasonable doubt which violated his right to a fair and impartial trial."  The appellate court denied this claim after finding that Jaramillo's failure to object at trial forfeited his claim on direct appeal.  *Jaramillo*, 947 N.Y.S.2d at 878.

As an initial matter, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim."  *Harris*, 489 U.S. at 262.  In finding this claim unpreserved for appellate review, the Appellate Division relied upon New York's

contemporaneous objection rule, CPL § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As Jaramillo never objected before the trial court to its failure to issue a curative instruction, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule.

In any event, Jaramillo's claim is without merit. To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under this standard, only "egregious" prosecutorial misconduct can give rise to a constitutional claim. *See Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003) (quoting *Donnelly*, 416 U.S. at 647-48). A prosecutor's comments in summation constitute "grounds for reversal only when the remarks caused 'actual prejudice.'" *Dunn v. Sears*, 561 F. Supp. 2d 444, 455 (S.D.N.Y. 2008) (citing *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998)). "In determining whether the prosecutor's comments cause[d] prejudice, [a] court considers three factors: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements.'" *Id*. at 457 (quoting *United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004)).

Jaramillo's claim falls far short of meeting these standards. During closing argument, the prosecutor asked the jury to review all of the evidence presented by the prosecution and defense and then stated, "I submit to you that if you do that, you will come to the undenial conclusion that there is only one reasonable alternative here, that [Jaramillo's] story does not amount to reasonable doubt, and that [he] is guilty of each and every charge contained in the Indictment." Jaramillo cannot show that this comment warrants habeas relief, particularly given that the court thereafter admonished the jury that:

> The defendant is not required to prove that he is not guilty. In fact, the defendant is not required to prove or disprove anything. To the contrary, the People have the burden of proving the defendant guilty beyond a reasonable doubt. That means before you can find the defendant guilty of a crime, the People must prove beyond a reasonable doubt every element of the crime, including that the defendant is the person who committed the crime.

Moreover, the prosecutor's statement during summation does not rise to the level of egregious conduct required for habeas relief. It is improper as a matter of both state and federal law for a prosecutor to impugn defense counsel's integrity, denigrate or ridicule the defense theory, or make *ad hominem* attacks on defense counsel. *See, e.g.*, *United States v. Biasucci*, 786 F.2d 504, 513-14 & n.9 (2d Cir. 1986) (characterizing as "clearly . . . inappropriate" the prosecutor's "needless and unwarranted *ad hominem* attacks against defense counsel[,] . . . [f]or instance, the prosecutor addressed defense counsel at one point as 'you sleaze,' at another as 'you hypocritical son-,' as being 'so unlearned in the law,' and on several occasions the prosecutor objected to questions by the defense as 'nonsense'" (internal citations to the record omitted)); *People v. LaPorte*, 762 N.Y.S.2d 55, 57-58 (N.Y. App. Div. 2003) (reversing conviction where prosecutor's remarks during summation were not fair response to defense counsel's summation and thus denied defendant a fair trial because evidence against defendant

was not overwhelming, prosecutor impugned defense counsel's integrity, ridiculed the defense theory as "mumbo jumbo," and "warned the jurors . . . several times that defense counsel was manipulating them and trying to prevent them from using their common sense") (citation omitted). But as the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (citation and internal brackets omitted). In this case, the Appellate Division's decision denying this claim was neither unreasonable nor contrary to federal law because the prosecutor's comment on summation was not improper and thus does not amount to a constitutional infirmity. Rather, the statement constituted a fair response to defense counsel's summation, in which he challenged the veracity of the prosecution's witnesses and the strength of its case. *See Knight v. Walsh*, 524 F. Supp. 2d 255, 287 (W.D.N.Y. 2007). Jaramillo therefore fails to show that the prosecution committed misconduct in any respect.

## C.     Request for Discovery

At Docket No. 12, Jaramillo requests discovery and an expansion of the record as to the authenticity of certain documents relating to his speedy trial waiver. Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts mandates that "[a] judge may, for good cause authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(b) requires that "[a] party requesting discovery must provide reasons for the request." Rule 7(a) provides that, "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition."

In support of his discovery request, Jaramillo avers that certain documents filed in Respondent's appendix are "forged instruments." Docket No. 12 at 2. The documents to which Jaramillo refers are a letter and an affidavit from his counsel which were originally included in the parties' joint appendix submitted on direct appeal and submitted by Respondent in this matter. As an initial matter, there is no indication that the documents, which are signed by counsel, are inauthentic. In response to Jaramillo's motion, Respondent filed two affidavits affirming that the documents were not altered prior to their submission in this case. Docket Nos. 14-1, 15. It appears that Jaramillo's challenge to the documents is not to their authenticity but rather to the veracity of the statements within. Jaramillo suggests that the documents, which indicate that counsel waived his client's speedy trial rights, reflect that he did so with Jaramillo's consent. This is untrue. The letters clearly indicate that counsel executed the waiver by signing his own name. As previously discussed, an attorney, acting without indication of a particular consent from his client, can waive his client's speedy trial right, as "[s]cheduling matters are plainly among those [rights] for which agreement by counsel generally controls." *Gonzalez*, 553 U.S. at 249.

In any event, because, as discussed above, Jaramillo is not entitled to relief on his speedy trial claim, further discovery on this issue is unwarranted. Furthermore, because this Court has considered and rejected Jaramillo's claims as without merit, the Court further dismisses the Petition thus rendering it inappropriate to expand the record under Rule 7.

V. CONCLUSION

Jaramillo is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Request for Discovery at Docket No. 12 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 2, 2014.

           /s/ James K. Singleton, Jr.
           JAMES K. SINGLETON, JR.
           Senior United States District Judge
